In The United States District Court
For the Eastern District of North Carolina
Civil Action No.: 7:21-cv-00130 BO

| | | |
|---|---|---|
| MICHAEL CHRISTIAN SIMMONS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT** |
| THE CITY OF SOUTHPORT NORTH | ) | **(AMENDED)** |
| CAROLINA, BRANNON GRAY, in his individual | ) | |
| capacity, KEVIN LONG, in his individual capacity, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW, the Plaintiff, by and through the undersigned, complaining of the Defendants, and allege and say:

## NATURE OF THE CASE

This action is seeking damages by Plaintiff against the Defendants for their intentional and egregious violations of 42 U.S.C § 1981, 42 U.S.C. § 1983, the United States Constitution, the North Carolina Constitution, and the common law of the State of North Carolina. To wit, Plaintiff seeks redress for unlawful employment discrimination, wrongful termination, and negligence.

## PARTIES AND JURISDICTION

1. Michael Christian Simmons ("Simmons"), was at all times relevant to this Complaint, an employee of The City of Southport Police Department ("SPD"), and a citizen and resident of Southport, Brunswick County, North Carolina.

2. The City of Southport, North Carolina ("Southport"), is a municipality located within the State of North Carolina, located in Brunswick County.

3. Upon information and belief, Southport employs more than fifteen (15) persons.

4. Defendant Brannon Gray ("Gray") was at all times relevant to this Complaint, an employee of the SPD, and upon information and belief, a citizen and resident of Brunswick County, North Carolina.

5. Defendant Kevin Long ("Long") was at all times relevant to this Complaint, an employee of the SPD, and upon information and belief, a citizen and resident of Brunswick County, North Carolina.

6. This Court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. §1331, as this case involves questions of federal law.

7. This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. 1367 (a) because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiff's state law claims share all common operative facts with his federal claims. Resolving Plaintiff's federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

8. Pursuant to 28 U.S.C. 1391 (b) (1)(2), venue is proper in, and Defendants are subject to the personal jurisdiction of, this Court because Defendants all reside in this District, and all of the events giving rise to this action occurred in this District.

## WAIVERS OF IMMUNITY

9. All allegations contained in paragraphs 1-8 are re-alleged and incorporated herein by reference.

10. Upon information and belief, Defendant City of Southport, pursuant to N.C.G.S. §160-A-485, has waived its immunity in civil liability in tort by purchasing insurance and or participation in a local government liability risk pool.

11. Upon information and belief, Defendant Southport, and any and all agents, employees, and officers, have waived sovereign immunity or governmental immunity that could have been raised by Defendants in the action by virtue of their insurance coverage, to the extent of said coverage.

12. Upon information and belief, Defendant City of Southport, any and all agents and employees further waived any sovereign or governmental immunity to the extent they had in force, at relevant times, plans of insurance pursuant to N.C.G.S. §160-A-485, and or participated in a local government risk pool pursuant to N.C.G.S. § 58-23, to cover acts, omissions, and or misconduct as alleged herein by the Plaintiff.

## FACTUAL ALLEGATIONS

13. All allegations contained in paragraphs 1-12 are re-alleged and incorporated herein by reference.

14. Plaintiff Simmons is an African American male who began his career in law enforcement in 1996 with the New Hanover County Sheriff's Department.

15. Simmons was hired as a police officer with the Southport Police Department, pursuant to a written employment agreement, entered into on or about April 2006.

16. Simmons was hired by the SPD by then Southport Chief of Police, Jerry Dove.

17. Upon information and belief, Simmons' starting salary with SPD was $23,000.00 per year.

18. Upon information and belief, the normal starting salary for an officer with Simmons' years of training and experience was $26,000.00 per year.

19. In an effort to offset Simmons' pay discrepancy, Simmons was encouraged by Chief Dove to find a part-time job. Chief Dove advised Simmons that he would sign off on any part-time employment as long as Simmons was able to immediately respond if he was called in to work at SPD.

20. Upon information and belief, numerous officers employed by the SPD, including Simmons, were allowed to maintain part-time employment with the permission of the Chief of Police and the City of Southport.

21. Based on Chief Dove's suggestion, Simmons obtained part-time employment at Lowe's hardware in Southport, North Carolina in or around April 2017.

22. Upon information and belief, Simmons was promoted to Corporal in 2008. Simmons did not receive a pay raise at the time of his promotion to Corporal and continued earning his salary of $26,000 per year. Upon information and belief, Simmons did receive annual staff raises and reached the level of pay assigned to a Corporal.

23. Upon information and belief, the position of First Sergeant was created in 2011 and Simmons was promoted to this position and named Patrol Commander.

Simmons did not receive a bump in pay following this promotion, but Simmons did receive annual staff raises.

24. Simmons was promoted to First Lieutenant in 2016. At the time of Simmons' promotion to First Lieutenant, the allotted first lieutenant salary was upon information and belief, $52,000.00. Simmons was paid a salary of $46,000.00 per year.

25. At the time Simmons was promoted to First Lieutenant, the SPD Chief of Police was Gary Smith ("Chief Smith").

26. Chief Smith was promoted from First Lieutenant to Chief of Police. Upon information and belief, when Chief Smith was First Lieutenant, Chief Dove allowed then First Lieutenant Smith to make his own work schedule.

27. Upon Simmons' promotion to First Lieutenant, Chief Smith allowed Simmons to make his own schedule, just as the prior Chief had allowed Smith to make his own schedule.

28. When Plaintiff Simmons was promoted to First Lieutenant, Chief Smith requested the full First Lieutenant salary for Simmons from the City of Southport.

29. Upon information and belief, Chief Smith was told by then City Manager Kerry McDuffie, "he'll take what's offered, or nothing."

30. Upon information and belief, Simmons, and other officers who were working part-time jobs, were encouraged to continue part-time employment until the budget would allow for pay raises.

31. Simmons continued his employment with Lowe's from April 2007 to approximately October 2017 ("Lowe's employment period"). At all times during

relevant to the Lowe's employment period, the Southport Chief of Police and the City of Southport were aware of Simmons' part time employment.

32. During the Lowe's employment period, there were never any written or verbal complaints from the City of Southport regarding Simmons' part-time employment. At no point during the Lowe's employment period did the City of Southport advise Simmons to stop his part-time employment.

33. In or around January 2018, upon information and belief, Chief Smith again asked then Southport city manager Bruce Oakley ("Oakley"), about paying Simmons the full First Lieutenant salary.

34. Upon information and belief, Chief Smith was told by Oakley to allow Simmons to work a part-time job until the budget could support the higher salary for Simmons.

35. After Simmons ended his employment with Lowe's, Simmons began driving trucks part-time for Oak Island Transport.

36. Upon information and belief, Chief Smith told Oakley that Simmons was being allowed to drive a truck part-time since Simmons was not being paid his entire salary.

37. Chief Smith also informed Oakley that Simmons was allowed to make his own schedule because that is what was allowed by his predecessor.

38. Chief Smith informed Oakley that if Simmons was driving during the day, Smith would cover the day shift, and Simmons would work the night shift.

39. Defendant Brannon Gray, a patrolman with the Southport Police Department, observed Simmons driving rental cars when returning from weekend

family trips and upon information and belief, complained to Chief Smith that he thought Simmons might be "selling drugs or doing something illegal."

40. Chief Smith advised Defendant Gray that Simmons was not selling drugs, but in fact worked a second job.

41. Defendant Gray was unmoved by Chief Smith's explanation, and upon information and belief, went to the Southport City Manager and made similar complaints about Simmons.

42. Defendant Gray went to the Southport City Manager as a member of the Southport Police Department to make a complaint about his superior.

43. Defendant Long, also an officer with the Southport Police Department, also went to the Southport City Manager to complain about Simmons' part-time employment.

44. Upon information and belief, Oakley told Long that he was aware of Simmons' part-time employment, and it did not pose a problem for the City of Southport.

45. Oakley never advised Simmons of the meetings with Defendant Long and Defendant Gray.

46. Oakley never advised Simmons to stop his secondary employment following the complaints received from Defendant Long and Defendant Gray.

47. At no point did the City of Southport ever advise Simmons to stop his secondary employment.

48. Upon information and belief, after not getting the desired result from their meetings with the Southport city manager, Defendants Long and Gray, acting under color of state law, began their own investigation of Simmons.

49. Upon information and belief, Defendants Long and Gray accessed Simmons' private property, including not limited to, computers, passwords, and other property to be determined through discovery, without permission of Simmons and without a search warrant.

50. Long and Gray began making unauthorized surveillance videos of Simmons that they later turned over to the Brunswick County District Attorney's office.

51. Long and Gray attempted to video Simmons and or make secret recordings of Simmons that they could later use to justify their unfounded suspicions.

52. Defendants Long and Gray conducted their unauthorized investigation while in uniform, and while being paid by the City of Southport.

53. Upon information and belief, both Defendant's Long and Gray voiced a desire for promotion within the Department.

54. Defendant Long upon information and belief, has used the racially insensitive term nigger ("N word"), in the presence of third parties, including Defendant Gray on numerous occasions.

55. Upon information and belief, Defendant Long referred to Plaintiff as a "dumb ass N word on multiple occasions.

56. Upon information and belief, Defendant Long made a reference to Simmons saying, "He ain't nothing but a blue gums." Upon information and belief, "Blue

gums" is a racially derogatory term used to describe dark skinned African American males. Plaintiff Simmons is a dark skinned African American male.

57. Upon information and belief, Long told officer Brian Sanders, a Major with the Brunswick County Sheriff's Department who was responding to a domestic violence call at Long's residence, "you ain't nothing but a nigger!"

58. Upon information and belief, Long referred to African American males on other occasions by saying, "I'd like to see them all swinging from a rope."

59. Upon information and belief, Long openly spoke about his ability to perform the job a First Lieutenant with the SPD better than Simmons because "Mike is just a dumb nigger."

60. Upon information and belief, Long has used the "N word" over 100 times when referencing African Americans, including Lieutenant Simmons.

61. Upon information and belief, defendant's Long and Gray ultimately went to the Brunswick County District Attorney's office and the Brunswick County Sheriff's Department with the results of their unauthorized investigation and accusations about Simmons "selling drugs" and working secondary employment.

62. Upon information and belief, based on Long and Gray's accusations of Simmons' alleged illegal activity, the district attorney's office contacted the North Carolina State Bureau of Investigation ("SBI"). Upon contact from the Brunswick County District Attorney's office, the SBI opened their own investigation which spanned the course of several months.

63. The SBI investigation failed to uncover any illegal drug activity by Simmons.

64. Instead, the SBI investigation only discovered that Simmons was working secondary employment, which was authorized by the City of Southport.

65. Simmons was charged with One count of obtaining property by false pretenses, failure to discharge a duty, and obstruction of justice respectively.

66. Despite the City of Southport being aware of Simmons' secondary employment, and never advising Simmons to end his secondary employment, the City of Southport is the alleged victim of the crimes that Simmons has been charged with committing.

67. Following the charges levied against Simmons, the City of Southport placed Simmons on unpaid administrative leave and ultimately fired from his job prior to the outcome of the criminal case.

68. Upon information and belief, when a Caucasian city of Southport detective was charged with murder, he was placed on paid administrative leave and kept his employment status until after the criminal proceedings were resolved.

69. Upon information and belief, the Southport Police Department has a custom or practice of allowing officers to call ask other officers to clock them in if they were on the way to the police department.

70. Upon information and belief, Defendant Long as well as other Caucasian called ahead and asked other officers to clock them in prior to their physical arrival at the police department.

71. Upon information and belief, Defendant City of Southport hired a Caucasian male as Simmons' replacement as First Lieutenant, at a starting salary of Fifty-Six Thousand Dollars ($56,000.00).

## Count I
## (Violation of 42 U.S.C. § 1981 – All Defendants)

72. All allegations contained in paragraphs 1-72 are re-alleged and incorporated herein by reference.

73. The provisions of 42 U.S.C § 1981 prohibit race discrimination in the making and enforcement of contracts. The term "to make and enforce contracts" has consistently been held to include the making, performance, modification, and termination of contracts, and the enjoyment of all the benefits, privileges, terms, and conditions of the contractual relationship.

*Defendant Southport*

74. Plaintiff and Defendant Southport had a contractual relationship based on Plaintiff's continued employment with the Defendant that falls within the governance of 42 U.S.C § 1981.

75. Defendant City of Southport discriminated against Plaintiff in the benefits, privileges, terms and conditions of his employment on the basis of his race, in violation of 42 U.S.C. §1981, by refusing to pay Plaintiff a salary consistent with his Caucasian counterparts on the basis of his race.

76. Defendant City of Southport also discriminated against Plaintiff in the benefits, privileges, terms and conditions of his employment on the basis of his race, in violation of 42 U.S.C. § 1981, by refusing to treat Plaintiff in a consistent manner to Caucasian officers with pending criminal charges.

77. By engaging in such discriminatory conduct, Defendant City of Southport knew or should have known that its conduct would cause Plaintiff, or any other person of ordinary sensibilities, damage, injury, and suffering.

*Defendant Kevin Long*

78. Defendant Kevin Long discriminated against Plaintiff in the benefits, privileges, and terms and conditions of his employment on the basis of race, in violation of 42 U.S.C. § 1981, by reporting Simmons' secondary employment to the Brunswick County District Attorney's office, solely on the basis of Simmons' race, despite Defendant Long's awareness that the secondary employment was authorized by Defendant City of Southport.

79. Defendant Kevin Long discriminated against Plaintiff in the benefits, privileges, and terms and conditions of his employment on the basis of race, in violation of 42 U.S.C. § 1981, by conducting an unauthorized investigation of Simmons' secondary employment, based solely on Simmons' race.

80. Defendant Kevin Long discriminated against Plaintiff in the benefits, privileges, and terms and conditions of his employment on the basis of race, in violation of 42 U.S.C. § 1981, by reporting Simmons, solely on the basis of his race, for allegedly asking other officers to clock him in, while not reporting other Caucasian officers for taking part in the same practice.

*Defendant Brannon Gray*

81. Defendant Brannon Gray discriminated against Plaintiff in the benefits, privileges, and terms and conditions of his employment on the basis of race, in violation of 42 U.S.C. § 1981, by reporting Plaintiff to the City of Southport and

the Brunswick County District Attorney's office for working secondary employment, solely on the basis of his race, while not reporting other Caucasian officers for the same acts.

82.  Defendant Brannon Gray discriminated against Plaintiff in the benefits, privileges, and terms and conditions of his employment on the basis of race, in violation of 42 U.S.C. § 1981, by conducting an unauthorized investigation of Simmons' secondary employment and suspected illegal activity, based solely on Simmons' race.

83.  Defendant Brannon Gray discriminated against Plaintiff in the benefits, privileges, and terms and conditions of his employment on the basis of race, in violation of 42 U.S.C. § 1981, by reporting Simmons to the City of Southport and Brunswick County District Attorney, solely on the basis of his race, for allegedly asking other officers to clock him in, while not reporting other Caucasian officers for taking part in the same practice.

84.  As a direct, proximate and foreseeable result of having been the victim of the discriminatory conduct that Defendants have directed toward Plaintiff, he has been damaged.

85.  As compensation for the above-noted injuries and losses, Plaintiff Simmons is entitled to recover economic and compensatory damages in excess of twenty-five thousand dollars ($25,000.00).

## Count II
**(Violation of 42 U.S.C. § 1983 – All Defendants)**

86. All allegations contained in paragraphs 1-85 are re-alleged and incorporated by reference herein.

87. The provisions of 42 U.S.C. § 1983 redress the deprivation of rights guaranteed by Federal and State law. These rights provide for damages for the denial of due process. Plaintiff seeks damages, including, but not limited to, lost commercial income and compensatory damages, as a result of the deprivation of rights by Defendants more fully described below.

88. At times relevant to this Complaint, Plaintiff Simmons had a property right in his employment with the City of Southport.

89. Defendant Southport, at all times relevant to this Complaint, was aware of Simmons' secondary employment, even to the point of encouraging said employment.

90. Defendant Southport failed to fully compensate Simmons based on his rank and experience as a law enforcement officer.

91. Defendant City of Southport failed to treat Plaintiff in the same manner that they treated other Caucasian officers in the same or similar situations.

92. Defendant Southport, acting under color of state law, statute, ordinance, and/or regulation, deprived Mr. Simmons of his civil and constitutional rights.

*Defendants Kevin Long and Brannon Gray*

93. The following actions Defendant Long and Defendant Gray, each of which wer perpetrated under color of state law and without just cause, were in violation of Mr. Simmons' statutory, common law, and constitutional rights and as such constitute violations of 42 U.S.C. § 1983, to wit:

a. Reporting Plaintiff to the City Manager of Southport based on meritless allegations of illegal activity;

   b. Reporting Plaintiff to the District Attorney of Brunswick County based on meritless claims of illegal activity;

   c. Conducting an unauthorized investigation of Simmons activities;

   d. Conducting a warrantless search of Simmons' personal items.

94. The Defendant Long and Defendant Gray's conduct in this regard was unconstitutional and perpetrated with a willful and wanton disregard of Mr. Simmons' rights, as well as the deliberate indifference to Simmons' rights.

95. Specifically, these actions of the Defendants Long and Gray, constitute violations of Simmons' rights under the Fourth Amendment's prohibition against unreasonable searches and seizures and the Fifth Amendment's Due Process Clause, as applied to the States through the Fourteenth Amendment. Furthermore, these actions violated Simmons' rights under the Fourteenth Amendment's Equal Protection Clause as well as other rights and protections granted under state law, federal law, and the North Carolina and United States Constitution.

96. The actions of these Defendants in depriving Simmons of his rights were taken under color of state law, statute, ordinance, and/or regulation.

97. As a direct and proximate result of the Defendant's violations of 42 U.S.C. § 1983, Simmons lost his career in law enforcement of over twenty (20) years.

98. As compensation for the above-noted injuries and losses, the Plaintiff is entitled to recover economic and compensatory damages from defendants in excess of Twenty-Five Thousand Dollars ($25,000.00).

## Count III
## WRONGFUL TERMINATION

99. All allegations contained in paragraphs 1-98 are re-alleged and incorporated by reference herein.

100. That Defendant City of Southport's termination of Plaintiff's employment was wrongful wherein Plaintiff was terminated on the basis of his race, which is a violation of State's stated public policy against discrimination based upon race.

101. N.C.G.S. § 143-422 *et seq*., also commonly referred to as the "Equal Employment Practices Act", provides that it is the public policy of this State to protect and safeguard the rights of all persons to seek, obtain, and hold employment without discrimination nor abridgment on account of race, religion, color, national origin, age, sex or handicap by employees who regularly employ fifteen (15) or more employees.

102. As a direct, proximate, and foreseeable result of having been the victim of the discriminatory and otherwise illegal conduct that the Defendants have directed toward Plaintiff, he has been damaged. He has lost, and will continue to lose, substantial wages, with a resulting loss of future earnings and enjoyment of life due to the termination of his employment. Simmons has also suffered, and is continuing to suffer, emotional distress, and mental anguish.

103. As compensation for the above-noted injuries and losses, Plaintiff is entitled to recover compensatory damages from Defendants in an amount in excess of Twenty-Five Thousand and No/100ths Dollars ($25,000.00).

## COUNT IV
## NEGLIGENCE – ALL DEFENDANTS

104. The allegations contained in paragraphs 1-104 of the Complaint are re-alleged and incorporated herein by reference.

105. Defendants had a duty of ordinary care to Plaintiff Simmons.

106. Defendants breached the duty of ordinary care to Simmons.

107. As a direct and proximate result of Defendants breach, Simmons suffered damages.

108. As compensation for the above-noted injuries and losses, Plaintiff Simmons is entitled to recover economic and compensatory damages in excess of twenty-five thousand dollars ($25,000.00).

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff respectfully prays that:

1. As to Count I of this Complaint, Plaintiff have and recover of Defendants Compensatory damages in an amount in excess of $25,000.00

2. As to Count II of this Complaint, Plaintiff have and recover of the Defendants an amount in excess of $25,000.00.

3. As to Count III of this Complaint, Plaintiff have and recover of Defendants an amount in excess of $25,000.00.

4. As to Count IV of this Complaint, Plaintiff have and recover of Defendants an amount in excess of $25,000.00

5. As to all Counts of this Complaint, Plaintiffs have and recover reasonable attorney's fees from Defendants.

6. As to all appropriate Counts of this Complaint, Plaintiff be awarded pre-judgment and post-judgment interest.

7. That the cost of this action be taxed against the Defendants.

8. That this case have a Trial by Jury on all issues so triable.

9. For such other and further relief as to the Court seems just and proper.

This the 1st day of September 2021

THE LAW OFFICES OF GREGORY REYNALD WILLIAMS, PLLC

/s/ *Gregory Reynald Williams*
_____
Gregory Reynald Williams
*Attorney for Plaintiff*
2232 Page Road, Suite 203
Durham, NC 27703
Telephone: 919-282-4696
Email: atty@grw-law.com
N.C. Bar No.: 47295

## CERTIFICATE OF SERVICE

This is to certify that on this day I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notification of such filing to the following:

Norwood P. Blanchard, III
*norwood@cmclawfirm.com*
*Attorney for Defendants*

This the 1st day of September 2021.


**THE LAW OFFICES OF GREGORY REYNALD WILLIAMS, PLLC**

*/s/ Gregory Reynald Williams*
Gregory Reynald Williams
NC Bar #: 47295
atty@grw-law.com
2232 Page Road, Suite 203
Durham, North Carolina 27703
Telephone: 919-282-4696
Facsimile: 877-520-5706