IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:21-CV-130-BO

MICHAEL CHRISTIAN SIMMONS, )
      Plaintiff, )
       )
v. )     **O R D E R**
       )
THE CITY OF SOUTHPORT NORTH )
CAROLINA, BRANNON GRAY, in his )
individual capacity, and KEVIN LONG, in )
his individual capacity, )
      Defendants. )

This cause comes before the Court on defendants' motion for summary judgment. Plaintiff has responded, defendants have replied, and a hearing on the matter was held before the undersigned on December 1, 2023, at Raleigh, North Carolina. In this posture, the motion is ripe for ruling. For the reasons that follow, the motion is granted.

## BACKGROUND

Plaintiff is a former City of Southport police officer who filed a complaint alleging that the City of Southport and two of his police colleagues, Kevin Long and Brannon Gray, subjected him to unlawful discrimination, denial of his due process rights, and wrongful termination when he was ultimately fired. Plaintiff's remaining claims in his second amended complaint are for racial discrimination under 42 U.S.C. § 1983 and wrongful termination and negligence under North Carolina law.

The undisputed facts are as follows. [DE 44 & 49]. Plaintiff was employed as a sworn police officer with the police department for the City of Southport, North Carolina, from 2006 to

October 2018. He was promoted three times, ultimately to the rank of lieutenant in 2016. When plaintiff was hired in 2006, Jerry Dove was the Chief of Police. Dove retired in 2016 and Kerry McDuffie, who was then city manager, promoted Gary Smith to chief of police and plaintiff to lieutenant. As lieutenant, plaintiff was the second-in-command under Chief Smith. Smith and plaintiff identify as African American, and plaintiff had a good relationship with both Smith and McDuffie. Plaintiff does not believe he was discriminated against by either Smith or McDuffie.

Defendants Long and Gray, who are both white men, were plaintiff's subordinates in the police department. Long was the first sergeant, directly under plaintiff in the chain of command, and Gray was not a supervisor. Plaintiff never personally witnessed either Long or Gray uttering racial slurs and plaintiff only learned of allegations regarding racial slurs after his employment was terminated.

In 2017 and 2018, plaintiff and Smith were engaged in secondary employment as part-time truck drivers for Oak Island Transport. In approximately September 2017 through early 2020 Bruce Oakley was the City Manager for the City of Southport. Oakley has testified that City of Southport police officers and other city employees were generally permitted to engage in secondary employment, so long as they did so while they were off duty from city employment and the other work did not interfere with their city employment.

In early 2018, a City of Southport police officer who is not a defendant, Jonathan Elliott, contacted a special agent with the North Carolina State Bureau of Investigations (SBI), Hunter Whitt, to report concerns that plaintiff was defrauding the City of Southport by engaging in truck driving for Oak Island Transport while he was "on the clock" for the police department. Officer Elliott put Special Agent Whitt in touch with Long, who, with Elliott, met with Special Agent

2

Whitt and Federal Bureau of Investigation (FBI) Agent Clint Morris. Special Agent Whitt and Agent Morris then began investigating plaintiff's activities.

Defendant Gray voiced his concerns regarding plaintiff's secondary employment to Oakley. Oakley brought the issue to Chief Smith's attention; Smith confirmed that both he and plaintiff had second jobs but that their truck driving work was outside their work hours for the City.

During the course of the investigation by Special Agent Whitt and Agent Morris, Whitt discovered conflicts between plaintiff's clocked hours for the Southport Police Department and his driving logs for Oak Island Transport. On July 26, 2018, plaintiff and Chief Smith were arrested and charged with criminal offenses, including obtaining property by false pretenses, failure to discharge a duty, and obstruction of justice. The City of Southport was the alleged victim of the crimes. On July 31, 2018, the entire Southport Police Department was suspended for three months due to the charges against Chief Smith and plaintiff. The day of plaintiff's arrest, City Manager Oakley placed plaintiff on administrative leave with pay. In August 2018, plaintiff's leave status was changed by Oakley to suspension without pay and he was indicted by a grand jury. Plaintiff's employment as a police officer for the City of Southport was terminated by Oakley on October 3, 2018. At the time of his termination, plaintiff's pay rate was $23.63 per hour, or $51,607.92 per year without overtime) and his year-to-date earnings were $42,133.30.

In January 2023, Smith pleaded guilty to one count of willful failure to discharge duties and one count of obstruction of justice; his remaining charges were dismissed. On February 1, 2023, plaintiff was convicted by a Brunswick County jury of willful failure to discharge duties and obstruction of justice, both misdemeanors. Plaintiff was acquitted of all felony charges, including obtaining property by false pretenses.

In January 2014, while McDuffie was city manager, another Southport police officer, Bryon Vassey, who is white, was charged with voluntary manslaughter after shooting and killing a suspect while responding to a mutual aid request from a neighboring town. Vassey was also initially suspended with pay while the incident was investigated, but his status was changed to suspended without pay after he was charged. Vassey was ultimately acquitted of all charges at trial.

In his response to defendants' Local Civil Rule 56.1 statement, plaintiff proffers the following additional material facts. The City of Southport hired its first African American police chief, George McCracken, in 1974 and he served in that position for six years. At his jury trial, plaintiff was acquitted of all felony charges, including three counts of obtaining property by false pretenses, and plaintiff has appealed his misdemeanor convictions. The City of Southport did not accuse plaintiff of stealing from the City or failing to discharge his duties. City Manager Oakley never reduced any complaints about plaintiff to writing. Following the jury trial, plaintiff filed a voluntary dismissal of the claims against Jonathan Elliott in this case because the testimony at trial established that the investigation into plaintiff's activities was based on statements from defendants Long and Gray.

## DISCUSSION

Defendants have moved for summary judgment in their favor on all of plaintiff's claims. They have also raised the defense of qualified immunity for the individual defendants Long and Gray. A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met,

4

the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. . . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

A. *§ 1983 claim*

Plaintiff brings a claim under 42 U.S.C. § 1983 alleging that the City of Southport violated his constitutional rights by (1) depriving him of the property interest he held in his job without due process and by failing to (2) fully compensate him or (3) treat him equally as compared to white officers. As plaintiff has alleged his § 1983 claim against the City of Southport, the Court addresses (4) whether he can support a claim against the City under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 690-94 (1978). Plaintiff further alleges that (5) the individual defendants violated his constitutional rights by making baseless allegations of illegal activity, conducting unauthorized investigations of plaintiff, and conducting warrantless searches of his personal items.

5

(1) Property interest in employment

The Court first addresses plaintiff's claim that he was deprived of a property interest in his employment without due process. Plaintiff has not responded to defendants' arguments on this claim, and the Court may thus consider any arguments plaintiff may have made to have been waived. *United Supreme Council v. United Supreme Council of Ancient Accepted Scot. Rite for 33 Degree of Freemasonry,* 329 F. Supp. 3d 283, 292 (E.D. Va. 2018) ("Failure to respond to an argument made in a dispositive pleading results in a concession of that claim."). Moreover, North Carolina has long recognized the doctrine of employment at will, where either party can terminate the employment relationship at any time. *Edwards v. Seaboard & R.R. Co.,* 28 S.E. 137 (N.C. 1897). An at-will employee has no property interest in his or her continued employment, absent "a statute, ordinance, or contract" conferring such an interest; mere employment "by a political subdivision" does not confer a property interest in continued employment. *Fiscus v. City of Greensboro, N. Carolina,* No. 1:18-CV-1010, 2020 WL 5518507, at *3 (M.D.N.C. Sept. 14, 2020) (citation omitted).

Plaintiff has identified no statute or contract which would confer a property interest in his continued employment by the City of Southport Police Department. Summary judgment in favor of defendants on this portion of his § 1983 claim is therefore appropriate.

(2) Compensation

Plaintiff has further not refuted defendants' evidence that his pay was not, as he alleged, $46,000 per year, but was approximately $52,000 per year, as he has alleged was the allotted first lieutenant salary. *See* [DE 22 ¶ 25]; [DE 44-10]. Summary judgment is appropriate in defendants' favor on plaintiff's claim for discriminatory pay.

(3) Disparate treatment in discipline

The Court next addresses plaintiff's allegation that he was discriminated against on the basis of his race in the enforcement of disciplinary measures. Courts may use Title VII standards to evaluate discrimination claims brought under § 1983. *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004).

> To establish a prima facie case of racial discrimination in the enforcement of employee disciplinary measures under Title VII, the plaintiff must show: (1) that he is a member of the class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees. If the plaintiff succeeds in proving a prima facie case, the burden of going forward shifts to the employer, who must articulate a non-discriminatory reason for the difference in disciplinary enforcement. Should the employer articulate such a non-discriminatory reason, the burden shifts back to the plaintiff to demonstrate that the employer's reasons are not true but instead serve as a pretext for discrimination. The plaintiff, however, always bears the ultimate burden of proving that the employer intentionally discriminated against him.

*Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993) (internal citations omitted). Plaintiff argues that he is an African American male who was engaging in authorized conduct but received discipline more severe than that received by Caucasian officers. Plaintiff further argues that he was targeted for scrutiny inconsistent with the scrutiny imposed on Caucasian officers.

Plaintiff's proffered comparator is Officer Bryon Vassey, who he contends was treated differently in disciplinary procedures following indictment by a grand jury. Plaintiff essentially agrees that Vassey is not a proper comparator but contends that there is no history of any white officers being suspended or terminated for engaging in secondary employment. A comparator must be similarly situated, meaning typically that he or she "dealt with the same supervisor, [was] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them

7

for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992); *see also Hurst v. D.C.*, 681 F. App'x 186, 191 (4th Cir. 2017).

Vassey and plaintiff were both indicted by a grand jury. But Vassey engaged in vastly different conduct from plaintiff, and he was ultimately acquitted for his conduct at trial. Vassey was also an officer charged with excessive force, while plaintiff was the second-in-command who had been charged with what amounted to stealing from the City. Plaintiff and Vassey were both suspended with pay until they were indicted, after which they were both suspended without pay. Contrary to plaintiff, Vassey's employment was not terminated following his indictment. However, City Manager McDuffie was responsible for making employment decisions regarding Vassey's conduct, while City Manager Oakley made the decision to terminate plaintiff's employment prior to the resolution of his criminal charges. *See Holtz v. Jefferson Smurfit Corp.*, 408 F. Supp. 2d 193, 206 (M.D.N.C. 2006) ("employee must generally show the same decisionmaker made the disparate employment decisions.").

At bottom, there are too many differences between plaintiff and Vassey for Vassey to serve as a proper comparator. Plaintiff has thus failed to proffer sufficient evidence which, even viewing the inferences in his favor, would establish an element of his claim.

Additionally, plaintiff has not presented any evidence which would create a genuine issue of material fact as to pretext. The evidence in the record shows that City Manager Oakley terminated plaintiff's, and Smith's, employment because they were charged with criminal offenses. Plaintiff does not dispute this. [DE 50-1] Simmons Depo. at 56-57. Nor does plaintiff proffer evidence which would tend to show that Oakley's given reason was dishonest or not the real reason for plaintiff's termination. *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000).

8

Summary judgment in defendants' favor is therefore appropriate on his discrimination in enforcement of discipline claim.

(4) *Monell* liability

Finally, plaintiff has not established that the issue of *Monell* liability against the city should proceed to trial. Under *Monell*, a local government can be held liable under § 1983 for its unconstitutional policies. Municipal liability only results "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id.* at 694.

Though plaintiff has alleged that the City of Southport has violated his constitutional rights, he has failed to proffer any evidence of any policy or custom. Plaintiff argues that there is a longstanding custom within the Southport Police Department to deny African Americans the opportunity to serve in command positions and further to ensure that African Americans in command positions have a short tenure. But municipalities are liable under *Monell* only for their own acts, and they are not vicariously liable for the acts of their employees. *Owens v. Balt. City State's Attys. Office*, 767 F.3d 379, 402 (4th Cir. 2014). Other than describing the history of the command structure at the City of Southport Police Department, plaintiff has identified no evidence which would support the conclusion that the City of Southport acted pursuant to a policy or custom when it engaged in any act which allegedly deprived plaintiff of a constitutional right, or that plaintiff's termination from employment is attributable to the City itself, rather than to one of its employees. Summary judgment in defendants' favor is thus appropriate.

(5) Discrimination by Officers Long and Gray

Plaintiff further alleges that the individual defendants violated his constitutional rights by making baseless allegations of illegal activity, conducting unauthorized investigations of plaintiff,

9

and conducting warrantless searches of his personal items. Plaintiff argues that defendants Long and Gray in their individual capacities engaged in discriminatory acts and "banded together to propel the criminal investigation into Plaintiff's alleged 'double-dipping.'" [DE 51 p. 13].

As noted above, it is undisputed that defendants Gray and Long did not initiate the investigation into plaintiff's "double-dipping." Further, plaintiff has not come forward with evidence which would tend to show that Gray and Long engaged in an investigation into plaintiff's activities which violated plaintiff's constitutional rights. In his deposition, plaintiff testified that Gray was upset that he did not get promoted and that he and Elliott were "mad because they couldn't get their way in the police department." [DE 50-1] Simmons Depo. at 26. Plaintiff also testified that Gray had reported to Chief Smith and to Long that he thought plaintiff was dealing drugs because plaintiff had rented cars. However, Gray's allegation to Smith resulted in no criminal charges or employment action against plaintiff. *Id.* at 20-21. Moreover, Agent Whitt's testimony demonstrates that after he conducted his investigation and collected evidence, his supervisors and the district attorney's office decided how to proceed. [DE 44-7 pp. 46-47]. Though plaintiff disputes that there were sufficient grounds to bring charges and has appealed his misdemeanor convictions, he has not come forward with evidence which would create a genuine issue of material fact as to whether the decision to charge plaintiff was based on his race. *See also United States v. Venable*, 666 F.3d 893, 900 (4th Cir. 2012) (to establish selective prosecution based on race, defendant must show "'(1) that similarly situated individuals of a different race were not prosecuted, and (2) 'that the decision to prosecute was invidious or in bad faith.'") (citation omitted). Further, though plaintiff has alleged that Long and Gray violated his Fourth Amendment rights by conducting unauthorized searches into his personal belongings, plaintiff cites no evidence which would support this claim. Rather, the evidence shows that after Elliott

10

reported to Agent Whitt that there could be an issue with plaintiff's secondary employment, Agent Whitt conducted an investigation, to include placing a pole camera at Oak Island Transport, with which Long and Gray cooperated.

Plaintiff has also alleged that both Gray and Long used racial slurs during their employment. "A racially hostile working environment must be sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." *Carter v. Ball*, 33 F.3d 450, 461 (4th Cir. 1994). However, plaintiff admits that no racially offensive comments by Gray or Long were made in his presence, and that he did not know about these comments until after his employment was suspended. Plaintiff cannot create a genuine issue of material fact as to statements about which he was unaware during his employment to support a hostile work environment claim. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 210 (4th Cir. 2019).

In light of the foregoing, defendants Long and Gray are also entitled to qualified immunity. Qualified immunity shields government officials from liability for statutory or constitutional violations so long as they can reasonably believe that their conduct does not violate clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). A court employs a two-step procedure for determining whether qualified immunity applies that "asks first whether a constitutional violation occurred and second whether the right violated was clearly established." *Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010). A court may exercise its discretion to decide which step of the analysis to decide first based on the circumstances presented. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Because the Court has determined that Long and Gray are entitled to summary judgment on plaintiff's claim of alleged constitutional violations, they are alternatively entitled to qualified immunity.

11

B. *State law claims*

Plaintiff has alleged two claims under North Carolina law. First, that he was wrongfully terminated in violation of North Carolina's public policy and second that defendants' actions were negligent. Plaintiff does not oppose defendants' arguments that summary judgment on his wrongful discharge claim is appropriate, and thus he has waived the issue. Moreover, "[t]he North Carolina Equal Employment Practices Act, N.C.G.S. § 143-422.1, *et seq.*, is essentially North Carolina's equivalent to Title VII." *McRae v. Niagara Bottling, LLC*, No. 5:20-cv-00131-KDB-DCK, 2020 U.S. Dist. LEXIS 214058, at *7 (W.D.N.C. Nov. 16, 2020); *see also Brewer v. Cabarrus Plastics, Inc.*, 130 N.C. App. 681, 686 (1998). Because the Court has determined that summary judgment is appropriate in defendants' favor on plaintiff's § 1983 discrimination claims, it concludes that summary judgment is appropriate in their favor on plaintiff's wrongful discharge claim as well.

Plaintiff has further not responded to defendants' argument that his negligence claim must be dismissed because the discriminatory acts about which he has complained are intentional acts. *See, e.g., Barbier v. Durham Cnty. Bd. of Educ.*, 225 F. Supp. 2d 617, 631 (M.D.N.C. 2002); *S.P. v. St. David's Sch.*, No. 5:22-CV-201-FL, 2023 U.S. Dist. LEXIS 174781, at *7 (E.D.N.C. Sep. 28, 2023). Defendants have correctly argued that plaintiff has complained only of intentional acts and his negligence claim is appropriately dismissed.

In sum, plaintiff has failed to create a genuine issue of material fact as to his § 1983 claims, and defendants are otherwise entitled to summary judgment. At bottom, plaintiff has agreed that Long and Gray did not initiate the criminal investigation against him, that City Manager Oakley terminated his employment because he was criminally charged, and that being indicted is a proper basis upon which to terminate a police officer's employment. Simmons Depo. at 27, 56. In his

12

opposition to entry of summary judgment plaintiff continues to rely heavily on the allegations in his second amended complaint, but at this stage he must come forward to proffer sufficient evidence to withstand such a motion. Plaintiff has failed to do so, and judgment is appropriate in defendants' favor on all claims.

## CONCLUSION

Accordingly, for the foregoing reasons, defendants' motion for summary judgment [DE 43] is GRANTED. The clerk is DIRECTED to enter judgment accordingly and close the case.

SO ORDERED, this 18 day of January 2024.

Terrence W. Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE